IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

MICHAEL J. CAVILL 2012
IRREVOCABLE TRUST,
: 
    Plaintiff,
:   Case No. 3:17-cv-270
v.
:   JUDGE WALTER H. RICE
BMC GROWTH FUND LLC,
: 
    Defendant.

---

DECISION AND ENTRY OVERRULING DEFENDANT'S MOTION TO
DISMISS COUNT III OF THE COMPLAINT, FRAUDULENT
INDUCEMENT (DOC. #13)

---

Defendant BMC Growth Fund LLC ("BMC") has filed a motion to dismiss Count III of Plaintiff's Complaint (Doc. #13), fraudulent inducement, and Plaintiff Michael J. Cavill 2012 Irrevocable Trust ("Cavill Trust") has filed a response. Doc. #24. For the reasons set forth below, BMC's motion to dismiss is overruled.

I. **Allegations of the Complaint**

In 2015, Cavill Trust, the owner of Clinical Research Solutions, LLC ("CRS"), entered into negotiations to sell CRS to BMC. During the negotiations, BMC was provided access to CRS's books and financial records; thus, BMC gained familiarity with how CRS operated and its sources of revenue. Doc. #1-4, PAGEID##190-191. As part of its due diligence, BMC was aware that CRS's

primary source of revenue was earned on a contract it had with an entity known as PharmaSeek Financial Services ("PharmaSeek"). *Id.* at PAGEID##191-192.

On November 24, 2015, Cavill Trust sold its interest in CRS to BMC and the parties executed a Member Interest Purchase Agreement ("the Agreement"). In general, the Agreement required BMC to pay a certain sum at closing along with a post-closing payment amount known as the "Target Earnout Payment." *Id.* The Target Earnout Payment was calculated based on a formula using CRS's revenues 30 days beyond the first anniversary of the closing date ("the Earnout Period"). The Agreement provided, among other things, for BMC to operate CRS in "good faith using commercially reasonable efforts to maximize revenues" and prohibited BMC from taking "any intentional action to knowingly reduce or defer revenues earned by [CRS] during the Earnout Period." *Id.* PAGEID#191.[1]

The Complaint alleges that on April 13, 2016, after signing the Agreement and during the "Earnout Period, BMC terminated CRS's contract with PharmaSeek, and that this was intentionally done by BMC in order to deflate revenues and prevent Cavill Trust from receiving the full Target Earnout Payment as set forth in the Agreement. The Complaint further alleges that near the end of the Earnout Period, CRS contacted PharmaSeek to inquire about entering into a new contract. On October 7, 2016, CRS and PharmaSeek signed a new contract which was outside of the Earnout Period. *Id.*

---

[1] Although the Complaint also alleges a dispute concerning a "Retention Escrow Amount," that issue is not presently before the Court.

2

BMC has moved to dismiss "Count III, Fraudulent Inducement," contending that Cavill Trust failed to plead this claim with particularity as required by Fed. Civ. P. 9 (b). Alternatively, BMC moves to dismiss this claim contending that Ohio law does not permit Cavill Trust to convert a contract claim into a tort claim.

II. **Standard of Review**

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a complaint on the basis that it "fail[s] to state a claim upon which relief can be granted." The moving party bears the burden of showing that the opposing party has failed to adequately state a claim for relief. *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citing *Carver v. Bunch*, 946 F.2d 451, 454-55 (6th Cir. 1991)). The purpose of a motion to dismiss under Rule 12(b)(6) "is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). In ruling on a 12(b)(6) motion, a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true,

and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis,* 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Treesh,* 487 F.3d at 476).

Nevertheless, to survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Unless the facts alleged show that the plaintiff's claim crosses "the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions "must be supported by factual allegations" that give rise to an inference that the defendant is, in fact, liable for the misconduct alleged. *Id.* at 679.

### III. Legal Analysis

BMC argues that Cavill Trust fails to plead fraud as required by Fed. R. Civ. P. 9(b) and states that there are no allegations indicating the time, place, and content of the alleged false representation as Ohio law requires. Doc. #13, PAGEID#224. "Who said this? When and where did it happen? Plaintiff offers no facts." *Id.* at PAGEID#225. BMC also alleges that the alleged statement relates to a matter of opinion and future performance and even if correctly pled, is nothing more than a contract claim impermissibly converted into a tort claim.

4

### 1. Rule 9 (b) and Fraud in the Inducement

The rationale of Rule 9(b) is (1) to alert parties to the particulars of the allegations against them so they can intelligently respond; (2) to prevent "fishing expeditions"; (3) to protect reputations against fraud allegations; and (4) to whittle down potentially wide-ranging discovery to only relevant matters. *Chesbrough v. VPA, P.C.,* 655 F.3d 461, 466–67 (6th Cir. 2011). Fraudulent inducement, or fraud, requires the following:

> (1) a false representation concerning a fact or, in the face of a duty to disclose, concealment of a fact, material to the transaction; (2) knowledge of the falsity of the representation or utter disregard for its truthfulness; (3) intent to induce reliance on the representation; (4) justifiable reliance upon the representation under circumstances manifesting a right to rely; and (5) injury proximately caused by the reliance.

*Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 874 (6th Cir. 2007) (citing *Cohen v. Lamko, Inc.*, 10 Ohio St.3d 167, (1984)). A plaintiff must prove all elements to recover on its claim. *Graham v. American Cyanamid Co.*, 350 F.3d 496, 507 (6th Cir. 2003). However, [R]ule 9(b)'s additional pleading requirements "should not be read to defeat the general policy of 'simplicity and flexibility' in pleadings contemplated by the Federal Rules." *U.S. ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496 (6th Cir. 2008) (quoting *Michaels Bldg Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 678 (6th Cir. 1988). "The Sixth Circuit has explained that '[s]o long as a [party] pleads sufficient detail—in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud—to allow

the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *MyVitaNet.com v. Kowalski*, No. 2:08cv48, 2008 WL 2977889, at *5, (S.D. Ohio July 29, 2008) (citing *United States v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir.2008)).

Fraud in the inducement exists when a party is induced to enter into an agreement through fraud or misrepresentation. Under Ohio law, "a claim of fraud in the inducement arises when a party is induced to enter into an agreement through fraud or misrepresentation.... A classic claim of fraudulent inducement asserts that a misrepresentation of facts outside the [agreement] or other wrongful conduct induced a party to enter into the [agreement]." *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 502–3, (1998). Fraud in the inducement requires the plaintiff to show that the defendant "made a knowing, material misrepresentation with the intent of inducing the plaintiff's reliance, and that the plaintiff relied upon that misrepresentation to [his] detriment." *Id.* at 498–502 (Ohio 1998). "A fraudulent inducement claim often involves a misrepresentation of facts outside the contract or other wrongful conduct inducing a party to enter into a contract." Res. Title Agency, at 774 (internal quotation marks omitted).

Count III alleges that before closing, BMC had access to CRS's books and financial records and gained familiarity with how CRS operated and knew that its primary source of revenue was based on a contract it had with PharmaSeek. The Complaint further alleges that on April 13, 2016, after the closing and during the "Earnout Period, BMC terminated CRS's contract with PharmaSeek in order to

6

deflate revenues and prevent Cavill Trust from receiving the full Target Earnout Payment." Further, Plaintiff alleges that near the end of the Earnout Period, CRS contacted PharmaSeek to inquire about entering into a new contract and ultimately did so. Importantly, the Complaint also alleges that "at the time BMC entered into the Agreement to purchase CRS, it had no intention to honor its obligations to operate CRS 'in good faith using commercially reasonable efforts to maximize revenues.'" Doc. 1-4, PAGEID#198. Cavill Trust alleged that it relied on BMC's representations to operate CRS in good faith and that, as a result of the actions of BMC, Plaintiff has been damaged. Based on the allegations of the Complaint, Cavill Trust has satisfied the requirements of Fed. R. Civ. P. 9 (b).[2]

BMC next argues for dismissal because the fraudulent inducement is based on future conduct. Although generally a fraudulent inducement claim should be dismissed if based "upon promises or representations relating to future actions or conduct," *Tibbs v. Nat'l Homes Constr. Corp.*, 52 Ohio App.2d 281, 369 N.E.2d 1218, 1222 (1977), an exception exists "where an individual makes a promise concerning a future action, occurrence, or conduct and, at the time he makes it, has no intention of keeping the promise." *Williams v. Edwards*, 129 Ohio App.3d

---

[2] Rule 9(b) only requires identification of the parties and not the individuals; this is especially true when the exact information is in the possession of the opposing party. *U. S. ex rel. Roby v. Boeing Co.*, 184 F.R.D. 107,111 (S.D. Ohio 1998). Given that the time period of the fraud is identified in the Complaint as well as the circumstances surrounding it, BMC has sufficient notice so that it can properly respond.

116, 717 N.E.2d 368, 374 (1998). This is, of course, exactly what Cavill Trust alleged: "...at the time BMC entered into the Agreement to purchase CRS, it had no intention to honor its obligations to operate CRS in "good faith using commercially reasonable efforts to maximize revenues." Accordingly, the fraudulent inducement claim is properly pled.

### 2. Breach of Contract

BMC's final argument is that the fraudulent inducement claim should be dismissed because it is in actuality only a claim for breach of contract. In Ohio, it is well-established that the tort injury must be unique and separate from any injury resulting from a breach of contract." *Medical Billing, Inc. v. Medical Mgmt. Sciences, Inc.*, 212 F.3d 332, 338 (6th Cir.2000). "Ohio courts have held that 'a tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed.'" *Thornton v. Cangialosi*, No. 2:09–CV–585, 2010 WL 2162905 (S.D. Ohio May 26, 2010) (quoting *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 151, (1996) (internal citations omitted)). If the tort claim is "factually intertwined with the breach of contract claim," a plaintiff cannot pursue relief under both theories. *Id.*

Cavill Trust, however, has alleged a fraud in the inducement claim that is not based upon the same actions as those upon which a claim of contract breach

is based. Specifically, while both fraud and breach of contract arise in part from BMC's failure to honor the terms of "good faith using commercially reasonable efforts to maximize revenues," the fraud claim is based on BMC's alleged intention not to perform the contract at the time it was entered into and its breach is based on the purported nonperformance regardless of its intention at the outset. "In order to be the basis for an action for fraud ... the alleged misrepresentation cannot be predicated simply upon a promise to perform that subsequently is unfulfilled. Rather, the plaintiff must prove by a preponderance of the evidence, that at the time the promise to perform was made, the promisor did not intend to fulfill the promise." *Wall v. Firelands Radiology, Inc.*, 106 Ohio App.3d 313, 326, (1995). In this case, Cavill Trust has specifically pled that, at the time BMC entered into the Agreement, it had no intention of honoring its obligation. Doc. #1-4, PAGEID#198. Based on the allegations of the Complaint, and pursuant to the standards of Rule 12(b)(6), Cavill Trust has properly pled a fraudulent inducement claim separate from its breach of contract claim.

### IV. Legal Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss Count III, fraudulent inducement, Doc. #13, is OVERRULED.

Date: September 28, 2018

*[signature]*
WALTER H. RICE
UNITED STATES DISTRICT JUDGE